[No. A053546. First Dist., Div. Two. Dec. 10, 1992.]

THE PEOPLE, Plaintiff and Respondent, v.
OMAR E. ARAGON, Defendant and Appellant.

**COUNSEL**

Martin James Elmer, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, John H. Sugiyama, Assistant Attorney General, Stan M. Helfman and Violet M. Lee, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

KLINE, P. J.—Defendant Omar E. Aragon pleaded guilty to possessing cocaine. On appeal he raises various objections based on his previous conviction of, and punishment for, a charge concerning sale of phencyclidine. While the highly unusual history of the case poses some difficult issues, we will ultimately reject defendant's contentions. We will also hold that respondent has not preserved for appeal its belated objection to the allowance of credit for time served on the previous conviction.

### BACKGROUND

Defendant was charged in April 1987 with selling phencyclidine (Health & Saf. Code, § 11379.5) and possessing cocaine (Health & Saf. Code, § 11350). Evidence at the preliminary hearing indicated that defendant was involved, with two others, in a sale of phencyclidine to undercover officers. When arrested and searched he was carrying a bindle of cocaine weighing 0.14 grams.

Defendant originally pleaded guilty to the cocaine count and not guilty to the sales count. On June 1, 1987, pursuant to a plea bargain, he pleaded guilty to possessing phencyclidine for sale and withdrew his guilty plea to the cocaine count, which was dismissed along with the phencyclidine sale charge and accompanying allegations of probation ineligibility. In July 1987, the court suspended imposition of sentence and placed defendant on three years' probation conditioned on (among other things) serving one year in the county jail. Defendant apparently completed this sentence, including 170 actual days in jail.

In 1990 defendant moved to withdraw his 1987 guilty plea on the ground that he had not been advised that conviction could subject him to deportation. (See Pen. Code, § 1016.5.) None of the moving papers are included in the present record, but the court treated the motion as a petition for writ of error *coram nobis* and habeas corpus. On September 12, 1990, the court granted the petition, set aside the guilty plea, vacated the conviction, and reinstated all dismissed counts. No appeal was taken from that order.

Defendant failed to appear at a trial date set for November 5, 1990, and a bench warrant issued. He was arrested in January and the case was called for trial on March 6, 1991. Defendant offered to enter a guilty plea, "open to the court," to the cocaine possession charge. Before accepting the plea the court stated to defendant, among other things, "There is no guarantee at all, Mr. Aragon, you're going to receive probation. [¶] You may be sent to state

prison for this offense." Defendant nonetheless pleaded guilty. The court accepted the plea and granted a defense motion to exclude the resulting conviction from evidence in the trial of the phencyclidine sales charge.

The jury acquitted defendant of selling phencyclidine.[1] The matter proceeded to sentencing on the cocaine charge. The probation report stated that in March 1990 defendant took a urinalysis test which was positive for phencyclidine. Defendant expressed perplexity at this result and denied using drugs. The probation officer did not appear to accept this denial, but nonetheless recommended that imposition of sentence be suspended, that no jail time be imposed, and that defendant be placed on probation for the "shortened term" of two years, "since the defendant did perform well under formal supervision from 1987 until 1990 . . . ."

In written arguments, the defense urged the court to (1) place defendant on diversion, (2) place him on probation for a brief period followed by immediate discharge so that he could seek dismissal under Penal Code section 1203.4, or (3) impose a jail term of less than 120 days. Any other disposition could be "devastating," the court was told, because it would increase the likelihood that defendant would be deported despite the fact that he had generally maintained employment and his family lived with him in San Francisco. The defense also asserted that credit was due for time served on the 1987 conviction.

At the sentencing hearing the prosecutor recommended that defendant be sentenced to the mitigated term of 16 months in prison. He stated that although the probation report failed to so note, defendant had been charged in 1987 with a violation of Health and Safety Code section 11350 and had completed diversion in connection with that offense. He also emphasized that defendant had been "bench-warranted" in this case "and was rearrested for lording [sic] with a weapon and giving a false name to a police officer."[2] The prosecution did not dispute, and appeared to agree with, defendant's assertions concerning his entitlement to credit for time served under the 1987 conviction.

---

[1] No trial transcript appears in the record on appeal.

[2] None of these facts are reflected in the probation report, and aside from the issuance of a bench warrant none are otherwise substantiated by the record on appeal. However, there is some indication in the reporter's transcript that the court and parties were referring to rap sheets which were not, for some reason, included in the record on appeal. In any event, defendant has not suggested that the factual assertions by the prosecutor were improper, and we assume that the court had some form of substantiation before it.

The court said that it was "considering probation in this case," but noted that "some defendants would not normally want probation."[3] In response to the court's question whether defendant wanted probation, defense counsel said, "He would like probation. I strongly urge probation." The prosecutor alluded to defendant's positive drug test in March 1990, and the court stated, "I'm aware of that. The man's got a drug problem. [¶] It may be that perhaps a stiff sentence and a probationary term might be valuable."

The court proceeded to impose a sentence of state prison for the middle term of two years, but suspended execution of sentence and placed defendant on three years' probation, subject to conditions including one year in the county jail. The court stated that this jail term was subject to credit for time served, including 170 days served under the 1987 phencyclidine conviction.

## I. DEFENDANT'S APPEAL

### A. *Introduction*

Virtually all of defendant's arguments revolve around the fact that when the present sentence was imposed he had already served three years on probation, with one year in jail, on the 1987 phencyclidine conviction. There is no doubt that in the usual course of things, that conviction would have barred further prosecution or punishment for the acts underlying that charge. (Pen. Code, §§ 654, 687, 1023; see U.S. Const., amend. 5; Cal. Const., art. I, § 15.) It goes without saying that dismissal of the cocaine charge as part of the 1987 plea bargain would ordinarily bar any further prosecution on that charge as well.

These consequences would have accrued here but for the fact that defendant chose in 1990 to obtain an order vacating the 1987 conviction and setting aside the underlying guilty plea. ██ Such an order "nullifies any proceedings taken under the guilty plea, and restores the defendant to the position of an accused who first presents a plea of not guilty." (4 Witkin & Epstein, Cal. Criminal Law (2d ed. 1989) Proceedings Before Trial, § 2177, p. 2553.) When a guilty plea is invalidated, the parties are generally restored

---

[3]Inferentially, this remark arose from the prosecution's recommendation that defendant be sentenced to the mitigated term of 16 months, and from defendant's entitlement, as all seemed to agree, to 363 days' credit for time already served. The court observed to defense counsel that "with that amount of credit, then, if he were sentenced as recommended by the district attorney, he would probably be released in a very short period of time." As to why a typical defendant might prefer a brief prison term followed by parole to a suspended sentence with probation, we note that the defendant would typically be discharged from parole about one year after release from prison (Pen. Code, § 3001), whereas a defendant placed on probation would typically not be discharged for two or three years.

to the positions they occupied before the plea bargain was entered. (*People v. Romanoski* (1984) 157 Cal.App.3d 353, 363 [204 Cal.Rptr. 33]; *People v. Hill* (1974) 12 Cal.3d 731, 769 [117 Cal.Rptr. 393, 528 P.2d 1], overruled on another point in *People v. DeVaughn* (1977) 18 Cal.3d 889, 896, fn. 5 [135 Cal.Rptr. 786, 558 P.2d 872].) The defendant may withdraw the plea and the prosecution may reinstate any charges that were dismissed in consequence of the plea. (*People v. Webb* (1973) 36 Cal.App.3d 460, 471 [111 Cal.Rptr. 524]; *People v. Romanoski, supra,* 157 Cal.App.3d at pp. 362-363; *People v. Fry* (1969) 271 Cal.App.2d 350, 359 [76 Cal.Rptr. 718].)

As applied here, these principles produce consequences which may appear anomalous. Defendant had already "done his time" on the phencyclidine charge and, but for his own resurrection of the case, was effectively immune from further prosecution. Ordinarily, a defendant in this position would have no reason to seek vacation of the prior conviction; indeed, it is the last thing he would be expected to do. We can only assume that the prior conviction here had collateral consequences which made it appear worthwhile for defendant to set it aside.[4] In any event, it is not suggested that in seeking to vacate the 1987 plea he lacked the effective assistance of counsel, acted inadvertently, or misunderstood the consequences of his actions. We must assume that he acted knowingly and intelligently.

We also observe that so far as the record shows, most of the arguments raised here were never presented to the court below in any form. Defendant was explicitly advised before entering his plea that the court might sentence him to prison, and he did not contend then or later that such a disposition was impermissible. At the sentencing hearing his attorney "strongly urged" the court to place him on probation. Aside from the question of credit for time served and an argument addressed purely to the court's discretion, it was never suggested that the 1987 sentence had any legal effect on the issues before the court in 1991.

We could hold that the failure to raise these points below precludes their presentation on appeal. (See *People v. Moore* (1983) 140 Cal.App.3d 508,

---

[4]The record contains no explicit statement of defendant's reasons for setting aside the plea to the phencyclidine charge, reopening the matter, and pleading guilty to the cocaine charge. His counsel, however, expressed concern over the immigration consequences of a prison sentence. We gather that defendant is an alien. As such he is at risk of deportation upon conviction of any crime involving controlled substances. (8 U.S.C.A. §§ 1251(a)(2)(B)(i), 1182(a)(2)(A)(i)(II), 1182(a)(2)(C); see 8 U.S.C.A. former §§ 1251(a)(11), 1182(a)(23).) The Secretary of State may waive deportation, but this is less likely where the conviction involves drug "trafficking." (See *Montilla v. I.N.S.* (2d Cir. 1991) 926 F.2d 162, 165-166; 8 U.S.C.A. § 1182(h); see 8 U.S.C.A. former § 1182(c).) We infer that defendant's objective, which indeed he achieved, was to shed the phencylidine conviction with its overtones of "trafficking." He was apparently willing to plead guilty to the cocaine-possession charge in order to keep the evidence of cocaine possession out of the trial on the phencyclidine charge.

511 [189 Cal.Rptr. 487] [double jeopardy defense not raised before trial].) If the points were meritorious, however, the failure to raise them might constitute ineffective assistance of counsel. (*Ibid.*) Accordingly, we deem it appropriate to analyze these issues on their merits.

## B.   *Multiple Punishment*

■   Contrary to defendant's contentions he is not now being punished for conduct "for which he ha[s] already been fully and completely punished." He was sentenced in 1987 for possession of phencyclidine for sale. He was sentenced in 1991 for simple possession of cocaine. Although the two offenses were committed at the same time, they involved separate conduct and facts; we perceive no basis for holding them transactionally related.

Nor does it appear that the court was in fact punishing defendant for both charges when it sentenced him in 1987. In the absence of an agreement between the parties or a transactional connection between the crimes, the court was barred from considering the facts surrounding the dismissed (cocaine) charge in sentencing defendant on the admitted (phencyclidine) charge. (*People* v. *Harvey* (1979) 25 Cal.3d 754, 758 [159 Cal.Rptr. 696, 602 P.2d 396]; see *People* v. *Gutierrez* (1980) 109 Cal.App.3d 230 [167 Cal.Rptr. 162].) Nothing in the transcript of the 1987 sentencing hearing, or elsewhere in the record, suggests that there was any agreement to permit consideration of the cocaine possession or that the court did in fact consider it in arriving at a sentence. Without some affirmative indication of such facts in the record, we must presume that the court followed the law and disregarded defendant's cocaine possession entirely. Accordingly it cannot be said that defendant has already been punished for that conduct.

## C.   *Vindictive Sentencing*

Defendant cites a body of cases in which a sentence was reversed that was intended in part to penalize the defendant for exercising some procedural right, particularly the right to trial.   ■   He apparently means to suggest that he was punished here for withdrawing his guilty plea, going to trial, and prevailing on the phencyclidine charge.

In the cited cases the record affirmatively demonstrated that the sentence was in part the product of a desire to penalize the defendant for exercising some litigation prerogative. In *In re Lawanda L.* (1986) 178 Cal.App.3d 423, 430 [223 Cal.Rptr. 685], for example, the juvenile court announced that it probably would have dismissed the case but for "the sad way in which [the juvenile] responded to the situation," including her failure to "simply step[]

forward and acknowledge[ ] [her] responsibility." In *People* v. *Weber* (1984) 162 Cal.App.3d Supp. 1, 7 [208 Cal.Rptr. 719], the sentencing court expressly relied in part on the rationale that the defendants "stole . . . the court's time" by attempting to raise certain defenses. In *People* v. *Morales* (1967) 252 Cal.App.2d 537, 542-543, fn. 4 [60 Cal.Rptr. 671], the court opined that the defendant and others like him were " 'play[ing] games' " by contesting charges without having " 'any basis of offering a defense' "; consecutive sentences were imposed although nothing about the crime or the defendant warranted such enhanced punishment.

Nothing in this record indicates that the sentence was intended in any degree to punish defendant for exercising his right to trial or any other procedural right.

## D. *Prior Sentence as Ceiling*

Defendant cites *People* v. *Gutierrez, supra,* 109 Cal.App.3d 230, 233, where the case was remanded for resentencing with instructions that the new sentence should not exceed the one originally imposed. For present purposes we join defendant in assuming that his successful attempt to set aside the prior conviction and guilty plea is comparable to a reversal on appeal for purposes of the principles relied upon in *Gutierrez*. We believe the principles themselves are inapplicable.

The *Gutierrez* court did not explain its directive other than to cite *People* v. *Collins* (1978) 21 Cal.3d 208 [145 Cal.Rptr. 686, 577 P.2d 1026]. In that case the defendant pleaded guilty to an offense which the Legislature then abolished. The Supreme Court reversed the conviction but, consistent with the rules mentioned above, ordered the reinstatement of 14 other charges which had been dismissed as part of the plea bargain. The court directed that any sentence on remand could not exceed that which was originally imposed. (*Id.,* at p. 216.) The court found support for this result in decisions applying principles of double jeopardy "to preclude vindictiveness and more generally to avoid penalizing a defendant for pursuing a successful appeal." (*Ibid.*)

This court has previously noted that *Collins* does not sweep as broadly as defendant appears to hope. "In *Collins*, the defendant challenged his conviction on the basis of . . . 'external events.' [Citation.] The *Collins* court found it proper to fashion a particular remedy to give that defendant partial benefits of a plea bargain agreement he made with the prosecution since *he was not repudiating the underlying agreement.*" (*People* v. *Romanoski, supra,* 157 Cal.App.3d at p. 363, italics added.)

■ A defendant who successfully challenges a guilty plea on appeal ordinarily has the choice on remand of standing on that plea and obtaining the benefits of the original bargain, or of withdrawing the plea and proceeding as though no bargain had ever been made. Where the defendant chooses the latter course the trial court is not precluded from imposing a harsher sentence than was called for by the plea bargain. (*People* v. *Serrato* (1973) 9 Cal.3d 753, 764-765 [109 Cal.Rptr. 65, 512 P.2d 289], disapproved on another point in *People* v. *Fosselman* (1983) 33 Cal.3d 572, 583, fn. 1 [189 Cal.Rptr. 855, 659 P.2d 1144]; see *Alabama* v. *Smith* (1989) 490 U.S. 794 [104 L.Ed.2d 865, 109 S.Ct. 2201] [no presumption of vindictiveness where more severe penalty imposed]; cf. *People* v. *Brown* (1987) 193 Cal.App.3d 957, 961-963 [238 Cal.Rptr. 697].) The difficulty in *Collins* was that the defendant could not be given the choice of standing on the original plea because the underlying charge was no longer a criminal offense. The conviction had been vitiated not by the defendant's repudiation of the plea bargain but by a change in the law. The defect in question had nothing to do with the plea, but would have compelled reversal had the defendant been convicted of the same offense in a trial. To deny him the substantial benefit of the bargain would unfairly aggrieve him for taking a successful appeal. Therefore, he was granted the substantial equivalent of what he had bargained for: the People could reinstate all viable charges, but could not obtain a sentence more severe than that which he had received under the bargained-for charge.

The situation in *Collins* is not analogous to the facts of this case. ■ Defendant flatly repudiated his bargain by withdrawing his guilty plea. He thereby intentionally relinquished the protection of the original plea bargain, consenting instead to set the matter at large. The principles of *Collins* did not preclude the imposition of a sentence more harsh than that originally imposed.

Defendant also cites *In re Pfeiffer* (1968) 264 Cal.App.2d 470 [70 Cal.Rptr. 831], as an illustration of the courts' broad power to fashion an appropriate remedy where a conviction is vacated after the defendant has been punished for it. This contention is addressed to the wrong tribunal at the wrong time. Contrary to defendant's suggestion, the dismissal of charges ordered in *Pfeiffer* was not based simply on the fact that the defendant had already served ample time on those charges. It rested heavily on the harm done to the defense by the lapse of time. (*Id.*, at pp. 476-477.) Moreover, it reflected the broad remedial powers available to a court on habeas corpus. (See *id.*, at pp. 476, 478-479.)

Defendant was free to ask the superior court to dismiss the entire case when it granted his petition for habeas corpus. This court can only grant

relief on appeal, however, if defendant shows reversible error in the order appealed from. Nothing in *Pfeiffer* points to any error by the trial court in the sentencing proceedings here.

### E. *"Harsher" Penalty*

Defendant persistently asserts that the trial court erred here by imposing a "harsher" or "more severe" penalty than it had imposed in 1987. He suggests that this violates the principle of *Collins, supra,* and reflects an abuse of discretion. In addition to the other weaknesses in this argument, we are puzzled by the assertion that the sentence before us is "harsher" than the earlier sentence.

A side-by-side comparison of the two sentences does not establish that the 1991 sentence is more severe than the 1987 sentence. In both, defendant was placed on probation for three years on conditions including a one-year jail term. The only noticeable difference is that in 1987 the court suspended imposition of sentence, while in 1991 it imposed a two-year sentence but suspended execution.

Assuming defendant complied with the conditions of probation he would entirely avoid prison under both sentences. If he did not comply with those conditions he might well have spent moi‿ time in prison under the 1987 sentence than under the 1991 sentence. The range of prison terms on the 1987 conviction was two, three, or five years. (Health & Saf. Code, § 11378.5.) The range on the 1991 conviction was sixteen months, two years, or three years. (Health & Saf. Code, §§ 11350, subd. (a), 11055, subd. (b)(6); Pen. Code, § 18.) The court fixed the term at two years—the minimum to which he was subject under the 1987 charge. The 1991 sentence as a whole does not appear "harsher" than the 1987 sentence.

Defendant seems to think the current sentence is "more severe" simply because it constitutes punishment "additional" to that already served under the 1987 sentence. This rests on the logically impenetrable premise that the two sentences must be added together for purposes of assessing the relative severity of the second one. If this were the case, *any* sentence on the later charge would have to be viewed as "more severe" because it would necessarily consist of the original punishment *plus* some "additional" punishment. The law provides a mechanism for analyzing problems of this kind. That mechanism is not the body of cases concerned with the relative severity of successive sentences, but rather the rules governing double punishment and credit for punishment already served.

### F. *Credit for Probation Served*

Defendant claims the time he spent on probation under the 1987 conviction should be credited against the probationary period imposed in

1991. He cites *People* v. *Schuler* (1977) 76 Cal.App.3d 324, 334-335 [142 Cal.Rptr. 798]. The defendant there initially pleaded guilty to two counts, nine others being dismissed as part of the plea bargain. The plea was then invalidated on defendant's writ of habeas corpus, and all 11 counts were reinstated. The defendant then pleaded guilty to four counts *other* than the two to which he had originally pleaded guilty. A previous panel of this court held that he was entitled to credit for time served on the two counts between sentencing and invalidation of the plea, because he had in effect been in custody on account of all eleven charges from the date of his arrest. (*Id.*, at p. 332.)

This holding rested primarily on statutes, notably Penal Code section 2900.5, governing credit for time served in confinement. By their terms those statutes have no application to fixing the period of probation. However, the court went on to hold, in the alternative, that allowing credit under the circumstances was also compelled by "traditional notions of fair play which underline the due process concept . . . ." (*People* v. *Schuler, supra,* 76 Cal.App.3d at p. 335.) It is this language upon which defendant relies, contending that similar notions require a sentencing court to allow credit for "time served" on probation under a previous, vacated conviction. However, this portion of the *Schuler* decision has never been cited, let alone followed, and we decline to extend it to time spent on probation under the unusual circumstances of this case.

Defendant suggests that allowing some form of probationary credit also flows logically from *Fayad* v. *Superior Court* (1957) 153 Cal.App.2d 79, 84 [313 P.2d 669]. That decision addresses no such issue. It holds that where the court imposes consecutive suspended sentences based on multiple charges, the maximum probationary period equals the maximum period for which the accused could be confined if sentenced to prison on all the charges. (See Pen. Code, § 1203.1.) Here the court did not impose consecutive suspended sentences. It imposed one sentence on one charge; that conviction was vacated; then it imposed another sentence on another charge.

Defendant also cites Penal Code section 1203.1 for the proposition that the maximum period of probation here was five years. That appears incorrect,[5] but more significantly, it appears irrelevant. Defendant was sentenced to three years' probation, well within the five-year limit.

---

[5] The maximum period of probation is "the maximum possible term of the sentence" or five years, whichever is greater. (Pen. Code, § 1203.1.) Had defendant been sentenced consecutively on both the phencyclidine charge and the cocaine charge, the maximum possible term of the sentence would have been five years and eight months. (Health & Saf. Code, §§ 11378.5, 11379.5, subd. (a) [five-year upper term for sale of phencyclidine or possession for sale]; Health & Saf. Code, §§ 11350, subd. (a), 11055, subd. (b)(6); Pen. Code, §§ 18

## G. *Abuse of Discretion*

■ Defendant makes two intertwined arguments to the effect that the sentence before us is an abuse of the sentencing court's discretion. One is that the sentence was unduly harsh by comparison to the sentence imposed in 1987. The other is that there were no new or different considerations before the court sufficient to justify its departure from the previous sentence.

We have already answered some of the implications of this argument. The sentence before us does not appear "more severe" than the sentence imposed in 1987. Defendant sought and obtained an order rendering the 1987 conviction a nullity. We see no basis for holding that the court's exercise of discretion in 1987 placed a limit on its discretion in 1991.

Defendant also contends that the cocaine charge was less serious than the phencyclidine-for-sale charge, and that, ipso facto, a less severe sentence was warranted. The short response to this contention is that the seriousness of the offense is only one factor in the sentencing calculus. (Cal. Rules of Court, rule 414.) Here the court explicitly found that "a stiff sentence and a probationary term might be valuable" in view of defendant's "drug problem." This in turn rested on the statement in the probation report that defendant had tested positive for phencyclidine consumption in March 1990. Defendant did not challenge that statement or the court's finding of a drug problem. He offers no cogent basis for discounting this consideration on appeal. All other things being equal, this fact supported a relatively longer probationary period both as evidence of recurring criminal conduct and as an indication of defendant's prior performance on probation and his willingness and ability to comply with the current conditions of probation. (See Cal. Rules of Court, rule 414(b)(1), (2), (3), (4).)

## H. *False Testimony*

■ Defendant's final objection concerns the sentencing court's remark that it believed defendant had testified falsely at trial.[6] Defendant contends that his supposed perjury was not a proper sentencing consideration because

---

[two-year middle term for cocaine possession], 1170.1, subd. (a) [consecutive sentence determined by adding principal term and one-third middle term for subordinate charge].)

[6]"I do not feel that the circumstances in mitigation outweigh those in aggravation in this case.

"Even though this is your first conviction, there are other indications in the probation report that you've engaged in a course of criminal conduct.

"In addition, the court, after hearing your testimony at the time of trial, is convinced that you may have falsely testified during the trial.

"And this fact alone in my judgment is sufficient to deny you probation or to deny the mitigated term.

"But it's my feeling that the mitigated term is unwarranted.

(1) it conflicted with his acquittal by the jury, and (2) it constituted punishment for an uncharged perjury offense.

■ The jury's acquittal of defendant on the phencyclidine charge did not preclude a finding that defendant testified falsely in that trial. The principles of double jeopardy are inapplicable for many reasons, among them the lack of identity between the phencyclidine charge and the sentencing issues here. In fact, double jeopardy would not bar a subsequent *prosecution* for perjury, notwithstanding defendant's acquittal. (1 Witkin & Epstein, Cal. Criminal Law (2d ed. 1988) Defenses, § 359, p. 414.)

Likewise, the weight of authority withholds the defense of collateral estoppel in such circumstances. (1 Witkin & Epstein, *op.cit.supra,* § 360, pp. 414-416.) We are further hampered from considering that defense because the record includes no transcript of the trial and we have no way of discerning what issues might have been actually litigated or necessarily determined by the jury. We do not know what defendant's testimony was or how it fit logically into his acquittal. ■ Further, the disparity in burdens of proof at trial and sentencing precludes the application of collateral estoppel. The jury had to acquit defendant of the phencyclidine charge even if it suspected he was perjuring himself, provided his testimony (or some other evidence) raised or left a reasonable doubt of his guilt. In sentencing, the trial court could find a given fact in aggravation or mitigation by a preponderance of the evidence. (Cal. Rules of Court, rule 420(b).) We see no reason in logic or policy for holding that the jury's finding of a reasonable doubt as to defendant's guilt precludes a finding by a preponderance of the evidence that defendant's testimony was false.

A more colorable question is presented by the possibility that the trial court impermissibly punished defendant for an uncharged perjury. ■ " 'A trial court's conclusion that a defendant has committed perjury may be considered . . . in fixing punishment as it bears on defendant's character and prospects for rehabilitation.' (*People* v. *Redmond* (1981) 29 Cal.3d 904, 913 [176 Cal.Rptr. 780, 633 P.2d 976].) To give a harsher sentence because of an uncharged offense for which there is no conviction, however, violates due process. (*United States* v. *Grayson* (1978) 438 U.S. 41, 54-55 [57 L.Ed.2d 582, 592, 98 S.Ct. 2610].) Therefore, consideration of a defendant's perjury at trial is limited to its reflection upon the character of the defendant and his or her prospects for rehabilitation. (*Ibid.*)" (*People* v. *Montano* (1992) 6 Cal.App.4th 118, 121 [8 Cal.Rptr.2d 136], review den.)

---

"And I do not feel that the circumstances in aggravation, though, are sufficient.

"Having considered all of these factors, I'm going to find that the circumstances in mitigation and aggravation are evenly balanced . . . ."

■ The record contains no explicit statement of the significance the trial court gave to the supposed perjury. There is a split of authority concerning the effect of a silent record on this point. The most recent decision is *People* v. *Montano, supra,* 6 Cal.App.4th at pages 122-123, where the court held that a claim of *Grayson* error could not be sustained on appeal without affirmative evidence that the trial court gave the defendant's perjury some impermissible significance. This conclusion rested on the familiar rule that error must be affirmatively shown and that in the absence of contrary evidence the trial court is presumed to have followed the law. (*Ibid.*) The court expressly declined to follow *In re Perez* (1978) 84 Cal.App.3d 168, 173 [148 Cal.Rptr. 302], which held that whenever the court alludes to false testimony in sentencing, the matter must be remanded unless the record affirmatively dispels the possibility that the defendant was impermissibly punished for an uncharged offense. (6 Cal.App.4th at pp. 121-122.)

We need not choose between *Montano* and *Perez* because we do not believe the trial court's consideration of defendant's supposed false testimony can be deemed prejudicial. Viewing the testimony as a factor in fixing the (suspended) term of confinement, we note that the court imposed the middle term in any event and that even without the false testimony there would not appear to have been a preponderance of mitigating circumstances. Viewing the false testimony as a factor in considering probation, we note that (1) probation was granted in any event, and (2) other factors threw equal or greater doubt on defendant's willingness and ability to perform well on probation, i.e., the positive drug test in 1990 and the failure to appear when this matter was first called for trial. We do not believe it reasonably likely that the court would impose a more lenient sentence if directed to explicitly state the purpose for which the false testimony was being considered. For that matter, we do not believe a more lenient sentence would have been likely had this factor been excluded entirely from the sentencing calculus.

## II. RESPONDENT'S OBJECTION

■ Respondent contends that the court erred in favor of defendant when it allowed credit for time served in jail on the 1987 conviction. Respondent asserts that this confinement was "solely attributable to another offense" and therefore could not serve as credit against the present offense.[7]

---

[7]We have jurisdiction of the contention under Penal Code section 1252, which provides that when a defendant appeals "the appellate court shall, in addition to the issues raised by the defendant, consider and pass upon all rulings of the trial court adverse to the State which it may be requested to pass upon by the Attorney General."

This argument has not been preserved for appeal. The prosecution not only failed to object to the allowance of this credit but appeared to expressly *accede* to it.

The probation report calculated defendant's credit for time served on the cocaine offense at 108 days, based on 2 days in jail before the 1987 conviction, 70 days in jail awaiting trial in 1991, and 36 days of conduct credit. The report also noted that the court might choose to grant additional credit for 255 days (170 actual days and 85 days' conduct credit) served on the 1987 conviction. The prosecution never disputed the implied assertion that the court had the power to allow these 255 days as a credit against any current sentence.

Before the hearing defendant filed papers asserting that he was entitled to credit for "all days in custody including the time he served on the possession for sale charge." The prosecution never disputed this point.

Most tellingly, in the sentencing hearing itself the court expressed doubt "as to how much credit the defendant is entitled to."[8] It was the deputy district attorney who, in response to that question, directed the court to the 255 days mentioned in the probation report. The colloquy then became somewhat ambiguous, but the court was apparently still discussing this

---

[8]"THE COURT: . . . I'm wondering with the historical background of this case and the amount of credit—there's some question in my mind as to how much credit the defendant is entitled to.

"The probation report at this time shows 72 days.

"Do you agree with that?

"MR. BLUMSTEIN: Definitely not.

"And I—

"THE COURT: What amount do you contend he's entitled to?

"MR. BLUMSTEIN: Well, on Page—

"MR. HUGO: Your Honor, on Page 10, it indicates 255 days.

". . . . . . . . . . . . . . . . . . . . . . . .

"THE COURT: Well, there is a question in my mind about the credit for time served.

"If you note, the first page says 72 days.

"I realize historically he was in custody, but then he moved to withdraw the plea, and the not-guilty plea was reinstated.

"MR. BLUMSTEIN: Your Honor—

"THE COURT: It's your position he's entitled to that credit.

"MR. BLUMSTEIN: Definitely.

"In your file, I submitted a bail, slash, O.R. motion and included and cited the law where he is entitled to that credit.

"THE COURT: Do you agree—do you concur?

"MR. HUGO: I do.

"THE COURT: So, then, is the total credit 255, or it 255 and 108?

"MR. BLUMSTEIN: It would be 255 and 108.

"THE COURT: So his actual time in custody, then, would be—

"MR. BLUMSTEIN: 363 with the—yes—with the SAGE."

255-day figure when it asked the prosecutor whether he concurred in defendant's claim and he replied, "I do." The court then proceeded to allow total credit of 363 days, without objection from the prosecution.[9]

We see no basis for permitting the prosecution to belatedly challenge the allowance of this credit. To deny it that opportunity is not to declare a forfeiture on merely technical grounds. The prosecution's manifest concurrence in the allowance of credit may well have colored defense counsel's strategy and argument as well as the court's overall sentencing calculus. In the absence of authority or other considerations compelling a contrary result, we will not entertain this belated contention.

The judgment is affirmed.

Smith, J., and Benson, J., concurred.

---

[9]The court adjusted this figure to 242 days, having subtracted conduct credits on the basis that since defendant was going to county jail instead of prison, "all he's entitled to is just actual time in the county jail," and "[t]he sheriff's department will compute the conduct credits."