Filed 1/10/14  P. v. Atkins CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H038834 |
| Plaintiff and Respondent, | (Monterey County Super. Ct. No. SS121342A) |
| v. | |
| EARL RAY ATKINS, | |
| Defendant and Appellant. | |

Defendant Earl Ray Atkins was charged with four counts of committing a lewd or lascivious act on a child under the age of 14.  (Pen. Code, § 288, subd. (a).)[1]  He pleaded no contest to one of the four counts conditional on a sentence of no less than three years and no more than eight years.  The trial court imposed the upper term of eight years.

On appeal, defendant contends the trial court abused its discretion at sentencing by considering factors unsupported by evidence, misapplying aggravating factors, and failing to consider mitigating factors.  Defendant asks that we dismiss the three remaining counts of committing a lewd and lascivious act, as well as an allegation that defendant was ineligible for probation, because his plea was conditioned on their dismissal.  He also asks that we correct the minutes of the plea hearing to show he was not advised in

---

[1] Subsequent undesignated statutory references are to the Penal Code.

accordance with the provisions of section 1192.5 that relate to the taking of a conditional plea.

We find no abuse of discretion in the trial court's decision to impose the upper term of eight years in state prison. We will, however, order dismissal of the three remaining counts of committing a lewd and lascivious act on a child under the age of 14, as well as the probation ineligibility allegation, as contemplated under the parties' plea agreement. We will also order the minute order corrected to reflect the transcript of the plea hearing.

## I. FACTS[2]

On July 11, 2012, 13-year-old Jane Doe told police that defendant—her stepfather—had sexually assaulted her two years earlier, when she was 11. Doe said the incident occurred at her grandmother's house when she was visiting with her mother and defendant. Doe had gotten into an argument with another family member when Doe's mother told her to come into a bedroom to sleep. Doe lay on the edge of the bed, while defendant lay next to her, and her mother lay on the other side of defendant. While defendant lay awake, unable to sleep, he reached over to rub Doe's belly. He then moved his hands into her pants and her underwear, and he touched her vagina. Doe was not sure if he penetrated her vagina. He rubbed her belly, chest, and vagina for approximately 30 minutes. She cried when it was over, but she did not know if her mother heard her.

Doe told her mother about the incident about six or seven months after it occurred. Her mother said she would speak with defendant. Later, Doe's mother told her that defendant had denied any wrongdoing and said he was probably sleeping.

Doe said defendant assaulted her again in 2011. When he came into her room to wake her up for school, he lay on the bed beside her, rubbed her belly, and rubbed her breasts. Doe was upset and cried at school, but she did not tell her teachers what

_____

[2] Our statement of facts is based on those set forth in the probation report.

2

happened. When she went home, she told her mother, "Earl's doing it again." Doe told her mother she was failing to protect Doe and choosing defendant over her. Doe's mother responded, "Do you know what that will do to this family if someone found out?"

In a pretext telephone call between Doe and defendant, he admitted touching her and said he knew it was wrong. Defendant said his wife hated him for it, and they fought every night.

Police arrested defendant and his wife at their home and questioned them in custody. At first, Doe's mother ignored officers' questions as to when Doe told her about the assaults, but she later admitted Doe had told her about them. The mother said defendant admitted touching Doe, but the mother did not know what to do about it. She said she knew that if she told anyone about it, her family would be destroyed.

Defendant admitted to police that he touched Doe. The first time it happened, he thought Doe was his wife. He denied touching Doe intentionally. However, defendant admitted touching her inappropriately on the second occasion by rubbing her breasts. He also thought his leg had rubbed against her vaginal area while they were lying next to each other. He said he was having problems with his wife at the time, and he acted without thinking. He described Doe as very affectionate, and claimed his body responded without him thinking about it. When his wife found out about it, she called him in hysterics and threatened to call police. For two years, defendant told his wife daily that if anyone found out, it would destroy their family, he would go to jail, and they would lose their home. He told police it was a relief to have the truth finally out, and he wrote a letter of apology to his wife and Doe.

## II. PROCEDURAL BACKGROUND

The prosecutor charged defendant with four counts of committing a lewd or lascivious act on a child under the age of 14. (§ 288, subd. (a).) The information also alleged defendant was ineligible for probation based on substantial sexual conduct with a child under 14. (§ 1203.066, subd. (a)(8).)

3

Defendant pleaded no contest to one of the counts of committing a lewd or lascivious act on a child (count 3) in exchange for a sentence of no less than three years and no greater than eight years. Defendant entered no plea to the remaining counts and did not admit or deny the probation ineligibility allegation. The minutes of the hearing refer to dismissal of the remaining counts, but the transcript of the hearing shows no such order by the court. Nonetheless, defendant waived his rights under *People v. Harvey* (1979) 25 Cal.3d 754 (*Harvey*), which otherwise would have precluded the court from considering the dismissed counts at sentencing. The minute order also indicates that the court advised defendant in accordance with the provisions of section 1192.5, but the transcript of the plea hearing shows no such explanation.

At the sentencing hearing, defendant addressed the court and apologized for his actions. Defendant admitted that, after the first incident, he told his wife and the victim that their family would be destroyed and they would lose their house if they told anyone about the incident.

After family members addressed the court, the court heard further argument from counsel. Defense counsel argued that, compared to most of the child molestation cases she had handled, defendant's offense did not warrant an aggravated term. The court and defense counsel then engaged in the following colloquy:

"[The Court:] Don't you ever wonder if we really know the whole story?

"[Defense counsel:] I do. I oftentimes wonder if we know the whole story.

"[The Court:] Don't you know we never know the whole story.

"[Defense counsel:] I don't think either side does, and I don't think—I'll make an assumption that the Court doesn't either.

"[The Court:] No. I agree with that. That's that's [*sic*] the thing. I mean, it's like every time we have someone come in and describe how much they had to drink, it's always two beers. I think if the guy is really big, he'll say three. It's just it is a dynamic of humanity to do that."

4

The court continued, describing at length the defendant's conduct and its effect on the victim. The court stated defendant sought to avoid accountability when he initially said he thought the victim was his wife. The court described defendant as a manipulator who repeatedly silenced his wife and victim with the prospect of familial destruction and the loss of their house if they spoke out. The court stated that these threats had caused the victim to suffer from guilt and conflict that she would likely endure indefinitely.

The court then turned to the statutory factors governing defendant's sentence. The court noted the age difference between defendant and the victim, together with the nature of his relationship to her, and the court found defendant had taken advantage of a position of trust. Based on defendant's statements to the victim and his wife concerning the destruction of their family and the loss of their house, the court found defendant had dissuaded two witnesses from reporting the offense. The court found defendant had engaged in conduct showing he was a danger to the community.

Turning to the defendant's criminal record, the court erroneously stated defendant had suffered nine felony convictions.[3] The court also found defendant had served a prior prison term, that he was on probation at the time of the offense, and that his prior performance on probation had been unsatisfactory. In considering mitigating factors, the court found defendant had admitted to the wrongdoing, and that his prior performance on parole had been satisfactory.

The court then found the aggravating factors "clearly" and "substantially" outweighed the mitigating factors. The court sentenced defendant to the upper term of eight years. Defendant lodged no objections.

The minute order for the sentencing hearing states, "All remaining charges, enhancements and/or special allegations are hereby ordered dismissed/stricken pursuant to PC 1385." The abstract of judgment shows a conviction on one count of a lewd or

---

[3] According to the probation report, defendant suffered four felony convictions and four misdemeanor convictions as of September 2012.

lascivious act on a child under the age of 14; entries for listing enhancements were left blank.

### III.     DISCUSSION

Defendant contends the trial court, biased and lacking impartiality, abused its discretion by sentencing him in reliance on matters outside the record and without substantial evidence.  Defendant also argues that several of the statutory factors in aggravation were inapplicable, and that the court failed to consider mitigating factors. Defendant argues his failure to object did not forfeit his claim, but that if it did, he suffered ineffective assistance of counsel.  Defendant further contends we must dismiss the remaining counts in the information, as well as the probation ineligibility allegation. Finally, defendant requests we order correction of the minute order for the plea hearing to show the court did not advise him in accordance with the provisions of section 1192.5.

The Attorney General implicitly concedes defendant has not forfeited his claim of improper sentencing because the probation report gave no notice of a recommended sentence and the trial court interrupted defense counsel before she could interpose an objection.  Accordingly, we will consider the merits of defendant's claims.[4]

The Attorney General further concedes that the trial court erroneously stated defendant had nine felony convictions.  Nonetheless, the Attorney General contends the court did not abuse its discretion in sentencing defendant, and that the factors cited by the court are supported by substantial evidence.  Finally, the Attorney General contends the record shows the court dismissed the remaining counts and the probation ineligibility allegation.  The Attorney General does not object to correction of the minutes regarding section 1192.5.

---

[4] For the same reason, we need not consider defendant's claim of ineffective assistance for trial counsel's failure to object at sentencing.

6

A. *Standard of Review*

A trial court's sentencing decision is subject to review for abuse of discretion. (*People v. Sandoval* (2007) 41 Cal.4th 825, 847 (*Sandoval*).) "The trial court's sentencing discretion must be exercised in a manner that is not arbitrary and capricious, that is consistent with the letter and spirit of the law, and that is based upon an 'individualized consideration of the offense, the offender, and the public interest.' " (*Ibid.*) A trial court abuses its discretion "if it relies upon circumstances that are not relevant to the decision or that otherwise constitute an improper basis for decision." (*Ibid.*) A single factor in aggravation may support imposition of an upper term. (*People v. Castellano* (1983) 140 Cal.App.3d 608, 615.) "When a trial court has given both proper and improper reasons for a sentence choice, a reviewing court will set aside the sentence only if it is reasonably probable that the trial court would have chosen a lesser sentence had it known that some of its reasons were improper." (*People v. Price* (1991) 1 Cal.4th 324, 492 (superseded by statute on other grounds).)

B. *The Court's Statement, "We never know the whole story."*

Defendant contends the trial court improperly based its decision on unsupported facts. Defendant also claims that the trial court improperly considered the behavior of criminal defendants generally and the "dynamic of humanity"—matters that were not properly before the court. As a result, defendant argues, the trial court improperly discredited the sincerity of his admissions to the charged offenses.

Specifically, after defense counsel argued defendant's actions were less blameworthy than those in most such cases, the court asked, "Don't you ever wonder if we really know the whole story?" The court then answered its own question: "Don't you know we never know the whole story." The court cited to instances of defendants who claimed to have only had two or three beers, and the court stated that "it is a dynamic of humanity to do that."

7

The court then continued, describing defendant's attempts to escape accountability and manipulate his family into a state of guilt and psychological suffering. Although defendant argues the court improperly based its decision "primarily" on such findings, the record does not show that the court based its decision on these factors, as opposed to the statutory factors the court set forth just before pronouncing the sentence. Nonetheless, the court's statements are troubling.

Our law requires sentencing based on an "individualized consideration of the offense [and] the offender," *Sandoval, supra,* at p. 847, not a general finding about the "dynamics of humanity" or the tendency of criminal defendants in general to minimize their misconduct. Adding to this concern are indications in the record suggesting the court may have considered an uncharged, unproven offense in its decision-making. Handwritten notes on the front page of the probation report state, "Rumor = molested [. . .] in past".[5] This appears to refer to a statement in the probation report from a relative of the victim. The relative reported hearing second hand from defendant's family that "this was not the first time that Atkins had molested someone." Although the relative "was not provided with specifics as to dates or location as to when this offense may have occurred," the relative claimed defendant had been convicted of the offense. In fact, defendant's record shows no such conviction.

The court's statement that "we never know the whole story" is of particular concern in this context. Nothing in the record shows the defendant was actually charged with such conduct. It would have been improper to use the relative's allegation as a factor in determining defendant's sentence. "To give a harsher sentence because of an uncharged offense for which there is no conviction [. . .] violates due process." (*People v. Aragon* (1992) 11 Cal.App.4th 749, 764 [citing *United States v. Grayson* (1978) 438 U.S. 41, 54-55].) However, absent some affirmative showing on the record that the court

---

[5] The omitted word identifies the alleged victim.

used the allegation as a factor in sentencing, we presume the court acted properly. (*People v. Montano* (1992) 6 Cal.App.4th 118, 122 [superseded by statute on other grounds].)  But even were we to assume the court considered the factor erroneously, for the reasons below, we do not find it reasonably probable the court would have chosen a more favorable sentence in the absence of such error.

    C. *Defendant's Statements And The Psychological Impact On The Victim*

As an initial matter, defendant disputes the court's characterization of his statements about how the molestation occurred, arguing that the record shows defendant was forthcoming and honest about the nature of the offense.  Defendant emphasizes admissions he made to his probation officer about details of the molestation not reported by the victim.  The court, by contrast, emphasized defendant's statement to police claiming he believed he was touching his wife when he first molested Doe—a statement the court characterized as incredible and an attempt to evade accountability.  Defendant does not dispute that he did in fact make that statement, which is set forth in the probation report.  The record, therefore, provides evidence for the fact of the statement, and we find no abuse of discretion in the court's characterization of the statement.

Defendant also contends the court exaggerated his statements to the victim and his wife in which he told them their family would be destroyed and their house would be lost if they told anyone about the assaults.  The probation report states that after defendant's wife discovered the second molestation, "he told her that if anyone found out, it would destroy their family, that he would go to jail and they would lose their home.  Atkins admitted that he pounded that into her head; daily, for two years and it was such a relief to finally have the truth out, as it was always held over his head."  At the sentencing hearing, defendant admitted for the first time that he had also told the victim not to tell anyone about his actions.  "I said if she—and I asked her not to tell because if she did, then it would destroy our family, and the kids would be without a father, which they are now because of my selfishness."

9

The court characterized defendant's statements as attempts to manipulate the victim and his wife into silence: "We know that he manipulates. He doesn't hesitate to manipulate. We know that because in the probation report it was clear that he—it was the—the topic of conversation between him and his wife when they argued, every night, according to her anyway. Every night arguing over what he did to that little girl. Every night that little girl hearing them argue about what he did to her, I am sure. Every night him telling her, If you say anything to anybody it will destroy you and me and our family. Shut up. I win, you lose. He manipulates."

Defendant contends this description is factually inaccurate because the record does not show the victim heard defendant threaten his wife "every night." According to the probation report, defendant and his wife shared joint custody of the victim with her father, so the victim could not have heard defendant arguing with his wife "every night." The court appeared to be relying on the probation report's statement that the defendant "pounded into [his wife's] head" on a "daily" basis the threat of familial destruction. While the court may have exaggerated the victim's exposure to such arguments, the record provides evidence for the court's overall description of these events. We find no abuse of discretion in the court's consideration of these statements.

Defendant further argues that the court, in the course of this description, attributed statements to the defendant that he did not make. The court paraphrased defendant's threats to the victim as follows: "If you, little girl, tell what I did to you, you will destroy this family. You will cause this wonderful world that we have—you will cause pain to your mother, you will cause pain to your siblings, your half-siblings. You will cause pain to an entire family, everybody that's here. You will destroy us, little girl." It is apparent from the court's adoption of the first-person voice that the court was intentionally setting forth a fictitious rendering of defendant's threats to the victim, not that the court factually and literally believed he used these exact words. We do not consider this language to constitute a factual finding.

10

The court then added, "I wonder how many times he communicated that message to that little girl? I wonder how many times at family events that little girl suffered because she couldn't tell." The court stated that the victim continued to bear the guilt of having ruined the family, and the court described at length the nature of her guilt and its effect on her psyche. Defendant contends the court's statements consisted of unfounded speculation, and that the record does not set forth evidence supporting the type and degree of psychological harm to the victim that the court described.

It appears the court's statements concerning the psychological impact on the victim were based on a letter to the court from the victim's biological father stating, "My wife and I listen to [Doe] tell about what happen [*sic*] and how she wonders why her mother [] did not listen the first time she told her, and why she is not allowed to see her brother and sister and why [mother's] parents are not talking to her, Her question is why, What did I do wrong? We explain that she did not do anything wrong, that a few adults have let her down, but there are many adults that are there to support and help her. However, the guilt this child carries is great, much too great for a child of her age. I ask that when you hand down Earl's sentence that you take into consideration that the years you give him, will never be the number of years our daughter and family will live with this loss of innocence." The probation report also noted that the victim had recently agreed to attend therapy in connection with the offense. While the court's elaboration on the nature of the psychological damage to the victim did not conform precisely to the nature of the impacts as set forth in the record, the court's statements are not without evidentiary support. They do not constitute an abuse of discretion.

Defendant also argues the court improperly addressed the defendant's family at the sentencing hearing. After describing the psychological impact on the victim, the court stated, "We have the family of one side here talking about him and what this Court what the outcome of this Court is—what the consequence is to him. We can protect her, somehow. We aren't with him every day, but we can protect her from him. But what can

11

you do for that little girl, who feels that she is responsible for him going to prison, the conflict that obviously exists between the two sides of the families right now. She's not going to Christmas and enjoying your company. She senses that you feel it's her fault somehow or that this wouldn't happen except for her telling. That's what her sense is. She's not going to talk about it. Are you? Are you going to say, I am so sorry about what happened to you because of him? Is that how it's going to work? Nobody's going to talk about it. Hey, let's not talk about it. It hurts to talk about it. So, you won't talk about it and she'll sit there and she'll wonder what's going on in your mind."

It is not clear from the record to whom the court was speaking at various points in these remarks. Some of these statements appear directed towards defendant, while others appear directed towards family members. As to other statements, the record does not reveal whom the court was addressing. However, nothing in the record shows the court based the sentence on anything other than factors directly relevant to defendant and the offense. The statements to others, especially those statements that speculate about and are critical of future family interactions, while inappropriate, do not constitute an abuse of discretion.

D. *Defendant's Dangerousness and Prior Convictions*

Defendant argues that the court abused its discretion in describing defendant as dangerous and having a "malignant heart." The court, after finding defendant a danger to the community, added, "I heard not too long ago a description of the people that really do create the biggest threat to others is the person who looks and acts, who appears, to be normal, hard working, someone you want to know, someone you want to have around you, and he has this malignant heart that you don't see." The court then noted defendant's record of criminal convictions, and continued: "You know, he has given a speech every night, if you tell it will destroy the family, knowing that, with full knowledge, that that is the consequence of this conduct if he does it. He does it again. Malignant heart. You cannot see it, you do not know it. It's the people that are like that,

12

who walk around invisible, that are dangerous. And you, sir, are dangerous. You're a nice guy. Hey, you're friendly. You're a good manipulator. You're dangerous. I think that's what you have demonstrated over and over and over again."

Defendant contends these statements are not supported by the evidence. Defendant argues that his criminal record—consisting primarily of convictions for non-violent offenses—does not show he is dangerous. The probation report states that his score on the Static-99, an actuarial measure of the risk for sexual recidivism, places him in the "low risk" category. Defendant also points to the numerous letters of support submitted by defendant's family members and coworkers emphasizing defendant's positive contributions to his family and the community.

A sentencing court considers whether a defendant has engaged in violent conduct indicating a danger to society under California Rules of Court, rule 4.421(b)(1). Additionally, a court considers whether the defendant's prior convictions are numerous or increasing in seriousness under California Rules of Court, rule 4.421(b)(2). Here, the court considered both factors, noting defendant's "malignant heart" and "nine [*sic*] felony convictions" together. The probation report shows defendant has four felony convictions for burglary, theft, and possession of a controlled substance. (§§ 459, 484; Health & Saf. § 11377, subd. (a).) Prior to the instant offense, he suffered his most recent conviction for misdemeanor spousal battery. (§ 243, subd. (e).) In addition to defendant's four prior convictions, the court could also consider the three dismissed felony counts under defendant's *Harvey* waiver. Thus, at the time of sentencing, defendant had been convicted of a total of five felonies and four misdemeanors, and he had recently been charged with three additional felonies. This record is sufficient to support the court's findings as to the defendant's dangerousness and the numerous or increasingly serious nature of his offenses. We find no abuse of discretion.

As to the court's misstatement of the number of felony convictions defendant suffered, the court's error was harmless. Even if defense counsel had objected and

13

corrected the number of felonies, it is not reasonably likely the court would have imposed a lesser sentence given the criminal record noted above.

E. *Other Factors in Aggravation*

Defendant contends the other factors in aggravation set forth by the court did not apply to the offense here. First, the court noted the age difference between defendant and the victim, and the court found defendant was in a position of trust. The court properly considered these factors under California Rules of Court, rule 4.421(a)(3) (the victim was particularly vulnerable) and rule 4.421(a)(11) (defendant took advantage of a position of trust or confidence). Defendant contends the court improperly relied on the defendant's young age because it is an element of the offense. (*People v. Ginese* (1981) 121 Cal.App.3d 468, 477 (use of victims' minority to impose upper term for convictions on two counts of child molesting was error).) However, the court's reference to the *difference* in their ages, in conjunction with the reference to the defendant's position of trust, shows the court was primarily considering the victim's *vulnerability*. (*People v. Robinson* (1992) 11 Cal.App.4th 609, 615 (child victim's vulnerability can be used even if age is an element of the offense) (disapproved on other grounds); cf. *People v. Quinones* (1988) 202 Cal.App.3d 1154, 1159 (error for court to consider victim's young age in absence of finding that defendant took advantage of a position of trust) (disapproved on other grounds).)

Defendant further contends the record fails to show defendant took advantage of a position of trust. We disagree. It is unlikely the victim would have gotten into bed with the defendant if he were not her stepfather. He took advantage of her doing so to commit the offense. The court's finding is supported by the record.

Finally, the court found defendant was on conditional probation at the time of the offense, a factor in aggravation under California Rules of Court, rule 4.421(b)(4). The probation report confirms this finding. Defendant argues this finding was unsupported because the court must have believed defendant was on conditional probation for a felony

14

offense, when in fact his was on probation for a misdemeanor offense. Defendant cites no authority for the proposition that only felony probation qualifies as an aggravating factor under this rule. Nor did the court state defendant was on felony probation. The court's finding was supported by the record and the court properly considered this factor in sentencing regardless of whether defendant was on felony probation or misdemeanor probation.

F. *Mitigating Factors*

Defendant contends the court failed to consider various factors in mitigation. The court found two factors on the record. The court described defendant's admission to the offense as a "heavy factor" in mitigation. (Cal. Rules of Court, rule 4.423(b)(3).) The court also acknowledged defendant's prior satisfactory performance on parole. (Cal. Rules of Court, rule 4.423(b)(6).) Nonetheless, the court found the aggravating factors clearly outweighed these mitigating factors.

Defendant argues that the court should have considered numerous factors in mitigation, including his expression of remorse, his family circumstances, his steady employment, his support for his family, his low score on the Static-99, his current abstinence from drugs and alcohol, his lack of a criminal conviction in recent years, his cooperation with law enforcement, his good character as demonstrated by letters of support, and that the crime was committed because of an "unusual circumstance" that is unlikely to recur. Of these asserted factors, only the last is statutorily mandated. (Cal. Rules of Court, rule 4.423(a)(3) [crime was committed because of an unusual circumstance, such as great provocation, that is unlikely to recur].) Defendant does not set forth any other unusual circumstances. Although the court is not limited to considering the statutorily mandated factors, a sentencing court is also not required to set out its reasons for rejecting mitigating factors. (*People v. Jones* (1985) 164 Cal.App.3d 1173, 1181.) We find no abuse of discretion in the trial court's failure to elucidate additional mitigating factors on the record.

15

Because the trial court did not abuse its discretion in sentencing defendant to the aggravated term, we will affirm the judgment.

G. *Dismissal of the Remaining Counts*

Defendant asks that we dismiss the three counts in the information to which he entered no plea, in addition to the probation ineligibility allegation under § 1203.066. He contends the parties contemplated dismissal of these counts under his plea agreement, but the court failed to do so. The Attorney General agrees that the plea agreement encompassed dismissal of these counts and the probation ineligibility allegation, but she contends the court dismissed the remaining counts via the signed minutes of the sentencing hearing.

It is apparent from the record that the plea agreement contemplated dismissal of the three remaining counts and the probation ineligibility allegation, as set forth in the probation report. However, transcripts of hearings show no such motion to dismiss by the prosecutor, nor any oral order by the court dismissing any of the three remaining counts or the probation ineligibility allegation. The minutes of the plea hearing state, "Dismissal of remaining counts-Harvey Waiver continued to time of sentence." The minutes of the sentencing hearing, signed by the court, state, "All remaining charges, enhancements and/or special allegations are hereby ordered dismissed/stricken pursuant to PC 1385." The abstract of judgment shows only the conviction as to Count Three, to which defendant pleaded no contest.

" 'Rendition of judgment is an oral pronouncement.' " (*People v. Mesa* (1975) 14 Cal.3d 466, 471.) When there is a discrepancy between the oral pronouncement of judgment and the minute order, the oral pronouncement controls. (*People v. Zackery* (2007) 147 Cal.App.4th 380, 385.) "The clerk cannot supplement the judgment the court actually pronounced by adding a provision to the minute order and the abstract of judgment. [Citation.] . . . [T]he clerk's minutes must accurately reflect what occurred at the hearing." (*Id*. at pp. 387-388.) There being no oral pronouncement of dismissal on

16

the record, we decline to find a dismissal based on the minutes. However, because the parties agree that dismissal was a condition of the plea agreement, we will order dismissal of the remaining counts and the probation ineligibility allegation nunc pro tunc to the pronouncement of judgment.

H. *Correction of the Minutes*

Defendant asks that we correct the minutes of the plea hearing to show that the court did not advise him in accordance with the provisions of section 1192.5. The minutes of the plea hearing state, "Plea is accepted by District Attorney and approved by the court *after explaining provisions of section PC 1192.5 to defendant*." (Italics added.) But the transcript of the hearing shows no such advisement. The Attorney General concedes the error and does not object to correction of the minutes. Accordingly, we will order the minutes corrected to omit the erroneous phrase.

## IV. DISPOSITION

Counts One, Two, and Four and the probation ineligibility allegation under section 1203.066 as charged in Information No. SS121342A are hereby dismissed nunc pro tunc to September 19, 2012. The trial court shall correct the minutes of the hearing on August 15, 2012, to delete the phrase "after explaining provisions of section PC 1192.5 to defendant." As modified, the judgment is affirmed.

17

_____
MÁRQUEZ, J.

We concur:


_____
RUSHING, P.J.


_____
PREMO, J.