Filed 4/17/26  P. v. Rivera CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JULIAN SALVADOR MARTINEZ RIVERA,<br><br>    Defendant and Appellant. | H052201<br>(Santa Clara County<br>Super. Ct. No. C2113713, C2208034) |

Defendant Julian Salvador Martinez Rivera pleaded no contest to one count of causing a fire (Pen. Code, § 452, subd. (c))[1] in Santa Clara County Superior Court Case No. C2113713 (Case No. '3713) and one count of carjacking (§ 215, subd. (a)) in Santa Clara County Superior Court Case No. C2208034 (Case No. '8034).  The trial court suspended imposition of sentence and placed Martinez Rivera on concurrent three-year terms of formal probation.

On appeal, Martinez Rivera argues that his trial counsel was ineffective for: (1) not renewing his application for mental health diversion based on a change to the law effective January 1, 2023; and (2) for not objecting to the three-year term of probation imposed at sentencing on the ground that it exceeded the two-year term he agreed to in his global plea bargain.

The parties waived oral argument, and the case was submitted by order filed on October 14, 2025.  On December 8, 2025, we vacated submission on our own motion and, by separate

---

[1] Unspecified statutory references are to the Penal Code.

1

letter, requested supplemental briefing from the parties. Based on our review of the record, the dockets in Case No. '3713 and Case No. '8034 were not consolidated in the trial court and therefore remain separate. We asked the parties to "address whether the order of probation in Case No. '3713, based on appellant's conviction for a violation of Penal Code 452, subdivision (c), is an unauthorized sentence under Penal Code section 1203.1 and, if so, what remedy is appropriate."

As we explain below, we do not agree that Martinez Rivera received ineffective assistance of counsel for failure to renew his application for mental health diversion based on a change to the law effective January 1, 2023. However, the Attorney General concedes, and we agree, that the trial court's order of probation in Case No. '3713 is an unauthorized sentence. Because both Case No. '8034 and Case No. '3713 were resolved by way of a global plea agreement, we will reverse both orders of probation. On remand, the trial court shall withdraw its approval of the global plea agreement and restore the parties to the status quo ante.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

### A. Procedure

On November 23, 2021, the Santa Clara County District Attorney filed an information in Case No. '3713, charging Martinez Rivera with three felony counts of arson (§ 451, subd. (c)) and one misdemeanor count of petty theft (§ 488). On November 21, 2022, the Santa Clara County District Attorney filed an information in Case No. '8034, charging Martinez Rivera with one count of felony carjacking (§ 215, subd. (a)). The information in Case No. '8034 also alleged the following aggravating factors: 1) that Martinez Rivera was armed with or used a weapon when committing the offense (Cal. Rules of Court, rule 4.421(a)(2)); and 2) Martinez Rivera has engaged in violent conduct that indicates he presents a serious danger to society (Cal. Rules of Court, rule 4.421(b)(1)).

Martinez Rivera entered into a global plea agreement in which he pleaded no contest to one count of causing a fire (§ 452, subd. (c)) in Case No. '3713[2] and the sole count of carjacking (§ 215, subd. (a)) in Case No. '8034. In exchange, the remaining charges in Case No '3713 and the

---

[2] At the change of plea hearing, the trial court granted the prosecution's motion for leave to amend the information in Case No. '3713 to add this offense.

aggravating factor allegations in Case No. '8034 were to be dismissed. At the change of plea hearing, the prosecutor stated that the disposition in both cases would be "two years of formal probation, 180 days' county jail [consecutive], and a general order of restitution."

At the sentencing hearing, the trial court suspended imposition of sentence and placed Martinez Rivera on three years of formal probation concurrent in both cases. Among other conditions of probation, Martinez Rivera was ordered to participate in and complete psychological treatment as directed by the probation department.

The court also imposed concurrent restitution fines of $300 (§ 1202.4, subd. (b), probation revocation fines of $300 (§ 1202.45),[3] court security fees [now court operations assessments] of $40 (§ 1465.8), and criminal conviction assessment fees of $30 (Gov. Code, § 70373). The court ordered Martinez Rivera to serve consecutive 180-day county jail terms, for a total term of 360 days.

On July 17, 2023, the trial court summarily revoked probation in both cases and issued a bench warrant for Martinez Rivera's arrest. Martinez Rivera was subsequently apprehended and remanded into custody. As of June 18, 2024, Martinez Rivera's probation "[r]emains [r]evoked" and the trial court suspended proceedings in both cases after declaring a doubt as to Martinez Rivera's competency pursuant to section 1368.

Martinez Rivera filed an untimely notice of appeal but, by separate order dated July 17, 2024, this court granted his motion for relief from default. Martinez Rivera subsequently timely appealed.

### B. Facts[4]

#### 1. Case No. '3713

San Jose Police Officer Jose Becerra testified that, around noon on October 17, 2021, he responded to the report of a fire around Alum Rock and Highway 680. The dispatcher described the person suspected of starting the fire as having "a small build, black hair, clean shirt[,] and blue jeans."

---

[3] The probation revocation fines were suspended pending successful completion of parole. (§ 1202.44.)

[4] Because Martinez Rivera pleaded no contest, we derive the facts from the transcripts of the preliminary examinations.

3

When he arrived on the scene, Becerra observed one "big" fire and "other smaller" fires east of Highway 680 close to residences. Becerra drove to the area to ensure that the fires were not affecting the homes. A witness showed Becerra a video taken on his cell phone which depicted the fires and Martinez Rivera "walk[ing] away." The witness told Becerra that he saw Martinez Rivera start the fire.

Becerra subsequently located Martinez Rivera at a convenience store approximately 100 yards from the site of the fires and took him into custody. Martinez Rivera was holding a cigarette lighter when Becerra first approached him. Next to Martinez Rivera, Becerra saw a shopping cart with personal belongings and "two roles [sic]" of copper wire.[5] Becerra arrested Martinez Rivera and, when Martinez Rivera requested "medical attention," Becerra transported him to a hospital. At the hospital, Becerra showed Martinez Rivera the witness's cell phone video, and Martinez Rivera said, " 'That's me.' "

Laura Martello, a San Jose Fire Department arson investigator, testified as an expert in investigation of arson crimes as well as in detecting and determining the origin and cause of fires. On October 17, 2021, Martelo responded to the report of the fires and determined there were three separate fires in the area. Martelo estimated that the first fire in the area had burned half an acre. Martelo did not find any signs of possible ignition sources for that fire, such as "cooking elements," candles, "discarded smoking materials," or downed power lines. The fire could have been started with a lighter or other handheld flame device, such as matches, cigarettes, etc.

Martello testified that the second fire was near a construction company about 100 yards from the first fire. The second fire involved "a tree, most likely, that had burned the longest," with "about 35-by-30 burned area around it." Martello did not find any possible ignition sources for the second fire, which also could have been started by a lighter.

The third fire was about 50 feet north of the second fire and was the largest of the three fires, burning five or five-and-a-half acres. Again, Martello found no possible ignition sources in the area

---

[5] After Martinez Rivera had been arrested, Becerra collected the wire and drove it to a nearby construction company that had reported a theft of copper wire. An employee confirmed that the wire found near Martinez Rivera had been taken from the construction yard.

and opined that the fire could have been started with a lighter. Martello testified that the convenience store where Martinez Rivera was arrested was about 50 yards "as the crow flies" from the third fire.

San Jose Police Officer Jennica Nguyen testified that, on October 17, 2021, she responded to a call from a witness at the construction company reporting that a man was setting a fire on a hillside nearby. As Ngyuen was searching the area looking for the suspect, she received a further communication that the witness was reporting a man had broken into their property and stolen some copper wire. Nguyen got to the location and saw two fires, one on the hillside near Highway 680 and a second fire inside the construction company's yard. Nguyen spoke to an employee at the construction company who told her that the only property missing from the yard was the wire. When she showed the employee a photograph of the two rolls of copper wire in the shopping cart by where Martinez Rivera was detained, the employee confirmed that wire belonged to the construction company.

### 2. Case No. '8034

On May 2, 2021, Maria M. was parking her car, a Nissan Versa, in her apartment's parking lot. As she got out of her car, a man walked up to her with a two-foot-long stick. When the man was three or four feet away from Maria M., he raised the stick over his head, and said, " 'Give me your car.' " Maria M. was afraid that the man would hit her, so she gave him the car. The man got in her car and drove away quickly.

At 6:30 p.m. on May 2, 2021, San Jose Police Officer Alejandro Carrillo Jimenez responded to a commercial park and observed Maria M.'s vehicle, which had driven "through a secure lot" and crashed into a parked semi-truck. Based on the amount of damage to the vehicle, Carrillo Jimenez believed it was "driving pretty fast" when it collided with the semi-truck.[6] The driver's side airbag had deployed, and another officer collected the airbag as evidence. Martinez Rivera was "a possible contributor to the major DNA component" found on the airbag.

---

[6] Maria M. testified that when she next saw her car at the impound lot it was "all damaged," the tires "were not straight," and the windows were shattered.

## II. DISCUSSION

### A. Ineffective assistance of counsel—mental health diversion

Martinez Rivera argues that his trial counsel provided ineffective assistance by failing to renew his (previously denied) request for mental health diversion after the effective date of Senate Bill No. 1223. (Stats. 2022, ch. 735, § 1, eff. Jan. 1, 2023.) As amended by Senate Bill No. 1223, there is now a presumption of eligibility for diversion under section 1001.36 unless the prosecution can establish by clear and convincing evidence that a defendant's diagnosed mental disorder was not a significant factor in the commission of the offense.

The Attorney General argues that Martinez Rivera has failed to show that trial counsel was ineffective because his attorney could reasonably have refrained from renewing the motion since the trial court had previously determined that Martinez Rivera failed to meet both the eligibility and the suitability requirements set forth in section 1001.36, subdivisions (b) and (c), respectively. Alternatively, the Attorney General contends that Martinez Rivera has not demonstrated that he was prejudiced by the failure to renew this motion because he has not met his burden of showing that he is suitable for diversion.

### 1. Additional background

On May 4, 2022, in Case No. '3713, Martinez Rivera applied for mental health diversion under sections 1001.35 and 1001.36. In his application, Martinez Rivera stated that he had been diagnosed with "Unspecified Psychotic Disorder, Major depressive disorder," and "Amphetamine-type Use Disorder." On August 31, 2022, Martinez Rivera supplemented his pending application to request diversion in the then-recently filed Case No. '8034.

The prosecution opposed the applications for diversion on the grounds that Martinez Rivera had not presented sufficient "evidence to demonstrate that [his] [mental health] disorders played a significant role in the commission" of the charged offenses or that he could comply with treatment as a condition of diversion. The prosecution also argued that Martinez Rivera poses an unreasonable risk to public safety and "is likely to commit a violent felony" if diversion were granted.

6

At the September 13, 2022 hearing on Martinez Rivera's application for mental health diversion, defense counsel argued that Martinez Rivera had "almost no criminal record," had not previously "been on any sort of treatment probation," and would be "getting a continuum of care" in diversion. Trial counsel also noted that Martinez Rivera had been "compliant with medication" while in custody. The prosecutor argued that Martinez Rivera's dangerousness was demonstrated by the fact that he committed the arsons alleged in Case No. '3713 just "ten days" after a charge of assault with a deadly weapon (§ 245, subd. (a)(1)) in a separate proceeding was reduced from a felony to a misdemeanor.

The trial court denied the application, finding that "the evidence before it at this time [was] insufficient to establish that [Martinez Rivera]'s mental health disorders … played a significant role in the crimes" and that Martinez Rivera's "alleged crimes show a motivation to engage in criminal activity and/or avoid apprehension for such activities." The court also found that "the level of violence[,] [] the use of weapons[,] and the significant degree to which the alleged crimes have put public safety … at risk," means that Martinez Rivera "would present an unreasonable risk of committing a homicide offense."

On October 19, 2022, Martinez Rivera asked the trial court to "reconsider its rulings in the interests of justice and judicial economy," due to a recent amendment to section 1001.36, which would become effective on January 1, 2023. Specifically, the amendment would require a court to find that a defendant's diagnosed mental disorder was a significant factor in the commission of the charged offense *unless* there is clear and convincing evidence to the contrary. In its opposition to the request for reconsideration, the prosecution argued that the request was premature as the statute had not yet become effective. The prosecution also contended that the amendment addressed only one of the statute's requirements for mental health diversion whereas the trial court concluded that Martinez Rivera had failed to meet other requirements that remain unchanged.

The trial court denied Martinez Rivera's motion to reconsider its prior ruling on the request for mental health diversion, finding that it would impose an "undue requirement" on the prosecution to preemptively meet a statutory change that both shifts and raises the burden of proof. The trial court

made clear that its "decisions with respect to any additional evidence" that the defense may wish to present in connection with a renewed request for mental health diversion were "without prejudice."

Martinez Rivera did not make a renewed request for mental health diversion after January 1, 2023.

### 2. Applicable legal principles

#### a. Ineffective assistance of counsel

The standard for evaluating claims that counsel provided constitutionally ineffective assistance is set forth in *Strickland v. Washington* (1984) 466 U.S. 668, 687–694 (*Strickland*). This standard provides that: "[t]o secure reversal … upon the ground of ineffective assistance of counsel under either the state or federal Constitution, [an appellant] must establish (1) that ... counsel's performance fell below an objective standard of reasonableness, i.e., that counsel's performance did not meet the standard to be expected of a reasonably competent attorney, and (2) that there is a reasonable probability that [appellant] would have obtained a more favorable result absent counsel's shortcomings." (*People v. Cunningham* (2001) 25 Cal.4th 926, 1003 (*Cunningham*).) "On direct appeal, a conviction will be reversed for ineffective assistance only if (1) the record affirmatively discloses counsel had no rational tactical purpose for the challenged act or omission, (2) counsel was asked for a reason and failed to provide one, or (3) there simply could be no satisfactory explanation. All other claims of ineffective assistance are more appropriately resolved in a habeas corpus proceeding." (*People v. Mai* (2013) 57 Cal.4th 986, 1009 (*Mai*).)

It is the appellant's burden to demonstrate by a preponderance of the evidence that his or her counsel's performance fell below an objective standard of reasonableness. (See *In re Thomas* (2006) 37 Cal.4th 1249, 1257 (*Thomas*).) "Unless [an appellant] establishes the contrary, we shall presume that 'counsel's performance fell within the wide range of professional competence and that counsel's actions and inactions can be explained as a matter of sound trial strategy.' [Citation.]" (*People v. Ledesma* (2006) 39 Cal.4th 641, 746 (*Ledesma*).) Further, "[f]ailure to raise a meritless objection is not ineffective assistance of counsel." (*People v. Bradley* (2012) 208 Cal.App.4th 64, 90.)

8

### b. Mental health diversion

"In 2018, the Legislature enacted sections 1001.35 and 1001.36 to create a pretrial diversion program for defendants with certain mental health disorders. [Citation.] Pretrial diversion 'allows for the suspension of criminal proceedings and potential dismissal of charges upon successful completion of mental health treatment.' " (*Vaughn v. Superior Court* (2024) 105 Cal.App.5th 124, 133 (*Vaughn*).) "As originally enacted, section 1001.36 provided that a trial court may grant pretrial diversion if it finds all of the following: (1) the defendant suffers from a qualifying mental disorder; (2) the disorder played a significant role in the commission of the charged offense; (3) the defendant's symptoms will respond to mental health treatment; (4) the defendant consents to diversion and waives his or her speedy trial right; (5) the defendant agrees to comply with treatment; and (6) the defendant will not pose an unreasonable risk of danger to public safety if treated in the community." (*People v. Frahs* (2020) 9 Cal.5th 618, 626–627, citing § 1001.36, former subd. (b)(1)–(6).)

"Effective January 1, 2023, mental health diversion requires trial court findings that the defendant is both *eligible* for diversion and *suitable* for the program." (*Sarmiento v. Superior Court* (2024) 98 Cal.App.5th 882, 891 (*Sarmiento*).)[7] The amendment recharacterized the first two requirements as eligibility criteria that no longer turn on findings to the court's satisfaction. Instead, the amended statute now provides that defendants are generally eligible for pretrial diversion if they "ha[ve] been diagnosed" with a recognized mental health disorder. (§ 1001.36, subd. (b)(1).) The amended statute creates a presumption the defendant's diagnosed mental disorder was a significant factor in the commission of the charged crime. Under this presumption, the trial court is required to find a causal connection between the diagnosed mental disorder and the commission of the charged crime "unless there is clear and convincing evidence that [the mental disorder] was not a motivating

---

[7] "Initially, the statute listed six criteria that the defendant had to meet [to qualify for diversion]." (*Sarmiento, supra*, 98 Cal.App.5th at p. 891.) "Effective January 1, 2023, . . . the[] first two requirements were recharacterized as 'eligibility' criteria." (*Ibid.*) "The amended statute groups the remaining four criteria in section 1001.36, subdivision (c) to assess the defendant's 'suitability' for diversion." (*Ibid.*)

factor, causal factor, or contributing factor to the defendant's involvement in the alleged offense." (*Id.*, subd. (b)(2).)

"Once eligibility is established, a trial court 'must consider whether the defendant is suitable for pretrial diversion.' (§ 1001.36, subd. (c).) A defendant is suitable if: (1) in the opinion of a qualified mental health expert, the defendant's mental health disorder would respond to treatment; (2) the defendant consents to diversion and agrees to waive their speedy trial rights; (3) the defendant agrees to comply with treatment requirements; and (4) the defendant will not pose an 'unreasonable risk of danger to public safety' as defined in section 1170.18 if treated in the community. (*Id.*, subd. (c)(1)–(4).)" (*Vaughn, supra*, 105 Cal.App.5th at p. 134.)

Section 1170.18 defines " 'unreasonable risk of danger to public safety' " as "an unreasonable risk that the petitioner will commit a new violent felony" within the meaning of section 667, subdivision (e)(2)(C)(iv). (§ 1170.18, subd. (c).) That provision of section 667 sets forth eight categories of offenses, colloquially referred to as "super strikes," one of which is "[a]ny homicide offense, including any attempted homicide offense, defined in [s]ections 187 to 191.5, inclusive." (§ 667, subd. (e)(2)(C)(iv)(IV).)

"Finally, the statute gives the trial court discretion to deny diversion even if the statutory requirements are met: '[T]he court *may, in its discretion*, … grant pretrial diversion to a defendant' after the court considers the two eligibility and four suitability requirements." (*Vaughn, supra*, 105 Cal.App.5th at p. 134, citing, inter alia, § 1001.36, subd. (a).) " 'Ultimately [] diversion under section 1001.36 is discretionary, not mandatory.' " (*People v. Qualkinbush* (2022) 79 Cal.App.5th 879, 887.) However, "[t]his residual discretion is not unfettered and must be exercised ' "consistent with the principles and purpose of the governing law." ' [Citations.]" (*Vaughn*, at p. 135.)

The 2023 amendments to section 1001.36 have been deemed ameliorative and apply retroactively. (*People v. Doron* (2023) 95 Cal.App.5th 1, 6–7.)

### 3. Analysis

On this record, Martinez Rivera has not shown, by a preponderance of the evidence, that defense counsel's performance fell below an objective standard of reasonableness. (See *Thomas, supra,* 37

10

Cal.4th at p. 1257.) We must presume "that 'counsel's performance fell within the wide range of professional competence and that counsel's actions and inactions can be explained as a matter of sound trial strategy.' [Citation.]" (*Ledesma, supra,* 39 Cal.4th at p. 746.)

There is no information in the record that reflects defense counsel's reason(s) for not renewing an application for mental health diversion. However, contrary to Martinez Rivera's assertion, there are possible justifications for that decision. For example, trial counsel may have reviewed the mental health records in Martinez Rivera's file and concluded the application was without merit, particularly as the trial court had previously concluded that Martinez Rivera failed to meet the suitability requirements set forth in section 1001.36, subdivision (c) and presented a risk to public safety. On this sparse record, Martinez Rivera has failed to overcome the "strong presumption" of competence that attaches to counsel's actions. (*Strickland, supra*, 466 U.S. at p. 689.) Without some evidence in the record that demonstrates counsel "had no rational tactical purpose for the challenged … omission, … or" that "there simply could be no satisfactory explanation," Martinez Rivera's "claim[] of ineffective assistance [is] more appropriately resolved in a habeas corpus proceeding." (*Mai, supra,* 57 Cal.4th at p. 1009.)

We also conclude that Martinez Rivera has not shown that he was prejudiced by trial counsel's failure to renew his application for mental health diversion. As noted above, the trial court previously found that Martinez Rivera presented a danger to public safety if he were treated in the community due to the "unreasonable risk [that he would] commit[] a homicide offense." Martinez Rivera had been charged with: (1) several counts of arson based on his actions of lighting multiple fires near residences and at least one business; and (2) one count of carjacking in which he brandished a weapon at the victim before driving away at high speed, ultimately crashing the vehicle into a parked semi-truck. The trial court cited these instances as well as the 2021 incident in which Martinez Rivera was charged with assault with a deadly weapon after swinging a machete at the victim. Again, on this record, there is no basis for concluding there was a reasonable probability that a renewed application for mental health diversion would have been successful.

11

### B. Term of probation in Case No. '3713

Martinez Rivera argues that his trial counsel was ineffective by failing to object "when the trial court placed [him] on a three-year grant of probation instead of the two-year probation term contemplated by the plea agreement."

In his original briefing, the Attorney General argued that Martinez Rivera's trial counsel may not have objected at sentencing because the three-year probation term was what the parties contemplated in the global plea bargain. Alternatively, the Attorney General contended that Martinez Rivera had not shown prejudice since his probation was summarily revoked just three months later, well within the two-year term to which he claims to have agreed.

However, in his response to our request for supplemental briefing, the Attorney General now concedes that the order of probation in Case No. '3713 is an unauthorized sentence. Martinez Rivera agrees that the sentence is unauthorized. We do as well.[8]

#### 1. Additional background

Martinez Rivera's March 29, 2023 change of plea form (Case Nos. '3713 and '8034) indicates that he was entering a plea in exchange for consecutive county jail terms of 180 days in each case "and up to 3 (three) years on [f]ormal [p]robation."[9] That same day, at the change of plea hearing, the prosecutor indicated that the disposition would be for "two years of formal probation" in each case. After Martinez Rivera confirmed that the "[plea] form conform[ed] with [his] understanding of the negotiated disposition," the trial court advised him that "[b]y pleading guilty or no contest you will be

---

[8] Accordingly, Martinez Rivera's argument that trial counsel was ineffective for failing to object to the terms of probation is moot. Martinez Rivera entered into a global plea agreement for both Case No. '3713 and Case No. '8034 and therefore the unauthorized term of probation in Case No. '3713 is an integral part of the negotiated disposition. We will reverse both orders of probation since the trial court should have rejected the global plea agreement (at sentencing) since at least a portion of that agreement is unauthorized.

[9] The plea form appears to have originally had the numeral "2" written in front of the pre-printed "years on [f]ormal [p]robation" but that numeral is crossed out and "3 (three)" is handwritten next to it. Martin Rivera argues that he did not "acknowledge[]" that modification "in writing," but on this record, we have no way of determining who made the modification or when it was made.

subject to … *up to three to four years of formal probation*." (Italics added.)  The trial court then clarified that "in this case it's envisioned—it's not the maximum—but it's envisioned for each of the cases that you will receive two years' formal probation."

The March 29, 2023 minute orders in both cases provide that Martinez Rivera was pleading no contest in exchange for 180 days in county jail and two years of formal probation.

However, the probation report notes, in the section entitled "Plea Conditions," that although "the Minute Order indicates [Martinez Rivera] will receive two (2) years Formal Probation, the Waiver and Plea form indicates he plead [*sic*] to a three (3) year probation term."  Accordingly, the probation report recommended that "Formal Probation be granted for three years" in each case.

The trial court suspended imposition of sentence and placed Martinez Rivera on concurrent three-year terms of formal probation in Case Nos. '3713 and '8034.

### 2. *Applicable legal principles*

The Legislature enacted Assembly Bill 1950, effective January 1, 2021, which significantly changed the law governing probation, including section 1203.1.  (*People v. Arreguin* (2022) 79 Cal.App.5th 787, 793 (*Arreguin*).)  Under the amended version of section 1203.1, the maximum term of probation a trial court may impose for most felony offenses is "a period of time not exceeding two years."  (§ 1203.1, subd. (a); *People v. Faial* (2025) 18 Cal.5th 199, 207 (*Faial*).)  " '[W]hereas previous law had authorized courts to grant a period of probation "not exceeding the maximum term for which the person could be imprisoned," Assembly Bill 1950 instead "authorize[s] a court to impose a term of probation not longer than 2 years, except as [otherwise] specified."  [Citations.]' " (*Arreguin*, *supra*, at p. 793.)  As a general matter, the amendments of Assembly Bill 1950 apply retroactively to the benefit of a person whose judgment is not yet final on appeal.  (*Faial*, *supra*, 18 Cal.5th at p. 211; *People v. Prudholme* (2023) 14 Cal.5th 961, 963 (*Prudholme*) [modifying term of probation to conform with new law while preserving remainder of plea agreement].)

### 3. *Analysis*

Pursuant to section 1203.1, the court may only impose a two-year term of probation for a violation of section 452, subdivision (c), which is the offense to which Martinez Rivera pleaded no

13

contest in Case No. '3713. The concurrent term of three years' formal probation in Case No. '3713 is therefore an unauthorized sentence.

Although the parties agree that this is an unauthorized sentence, they disagree on the appropriate remedy. Martinez Rivera contends that, because the three-year term of probation in Case No. '3713 is an unauthorized sentence, he should be permitted to withdraw his plea on remand. The Attorney General contends that, rather than allowing Martinez Rivera to withdraw his plea, the trial court should be directed to withdraw its approval of the plea agreement, "after which the prosecution may 'either agree to the new, reduced term' or 'negotiate a different, legally authorized disposition' with appellant," citing *Prudholme*, *supra*, 14 Cal.5th 961 and *People v. Greeley* (2021) 70 Cal.App.5th 609.

"Generally, a court may not accept an unauthorized plea. ' "Where a trial court is asked to approve an illegal plea bargain—illegal because it violates a policy condition established by the Legislature or the people through the initiative process—the proper course of action for the court is clear. It should decline to act in excess of its authority and should refuse to approve an arrangement under which it is called upon to do so." ' [Citation.] 'Faced with … an unlawful plea bargain, a trial court should withhold approval of the bargain.' [Citation.] Thus, if a court has approved a plea bargain containing an illegal term, ordinarily, the recourse for a court would *not* be to reform the bargain to make it legal; it would be to withdraw its prior approval of the agreement." (*Prudholme*, *supra*, 14 Cal.5th at p. 974.) "Whether by withdrawal of its prior approval or the granting of a withdrawal/rescission request by one or both of the parties, the trial court ' " 'must restore the parties to the status quo ante.' " ' " (*People v. Stamps* (2020) 9 Cal.5th 685, 707; see *People v. Aragon* (1992) 11 Cal.App.4th 749, 756–757 ['When a guilty plea is invalidated the parties are generally restored to the positions they occupied before the plea bargain was entered'].) The parties may then enter into a new plea agreement, which will be subject to the trial court's approval, or they may proceed to trial on the reinstated charges." (*People v. Barton* (2020) 52 Cal.App.5th 1145, 1159.)

In this case, the plea agreement was unlawful when it was approved at sentencing since it sought to impose a three-year probation term in Case No. '3713. Consequently, the trial court should not have

14

approved the global plea agreement, and on remand, we will direct that it withdraw its approval thereof and restore the parties to the status quo ante.[10]

### III.    DISPOSITION

The orders of probation are reversed.  On remand, the trial court shall withdraw its approval of the plea agreement.

---

[10] In addition, given the length of time that has elapsed since the original dispositions in Case No. '8034 and Case No. '3713, and without knowing what has occurred while this appeal was pending, the trial court is better positioned than this court to address the appropriate path forward for these cases.

_____
WILSON, J.

WE CONCUR:

_____
GROVER, ACTING P. J.

_____
LIE, J.

*People v. Martinez Rivera*
H052201